IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHNNY ISENHOUR III,** : | |
| Plaintiff : | Civ. No. 14-CV-1170 |
| : | |
| v. : | |
| : | |
| **R.M.L., INC.** : | |
| **d/b/a PLAY SMART,** : | **Judge Sylvia H. Rambo** |
| Defendant : | |

# **M E M O R A N D U M**

In this Title VII action, Plaintiff has brought claims against his former employer for sexual discrimination, sexual harassment, hostile work environment, and retaliation. Presently before the court is Plaintiff's motion for leave to file a second amended complaint to add an additional defendant, his proper and/or joint employer. (Doc. 25.) For the reasons stated herein, Plaintiff's motion will be granted.

## **I.     Background**

Upon receiving notice of his right to sue by the Equal Employment Opportunity Commission ("EEOC"), Plaintiff initiated this action by filing a complaint against R.M.L., Inc. ("RML") on June 17, 2014. (Doc. 1.) In the complaint, Plaintiff alleged, *inter alia*, that he was employed as an accounts receivable representative by RML from March 2012 until June 2012, during which time he was repeatedly subjected to sexual harassment. (*Id.* at ¶¶ 11-22.) Plaintiff further alleged that, after reporting the harassment to management, he was terminated from his employment for pretextual reasons. (*Id.*)

On August 27, 2014, RML filed an answer to the complaint, wherein it denied having ever employed Plaintiff or any of the purported discriminators referenced in the complaint. (Doc. 8, ¶¶ 11-14, 16-17, 21; *see* Doc. 25-6, pp. 2-3 of 4.) RML also indicated that it lacked sufficient information to admit or deny nearly all of the allegations in the complaint. (*See generally* Doc. 8; *see also* Doc. 25-6, p. 2 of 4.)

Pursuant to standard case management practice, the court held a case management conference with counsel for the parties on October 14, 2014. (*See* Doc. 9.) During the conference, counsel briefly discussed RML's representation that it was not Plaintiff's employer and the court identified that same should be addressed as soon as possible, but noted that it would, nonetheless, issue a complete scheduling order later that day. In the order, the court set the deadline for joinder of parties and amendment of the pleadings as November 28, 2014. (*See* Doc. 13.)

On October 15, 2014, Plaintiff sent correspondence to RML seeking the proper identity of Plaintiff's employer as outlined in the complaint and included a notice of a designee deposition of RML.[1] (*See* Doc. 25-5.) In response, RML indicated that the vice president of RML, Ivan Rempel ("Mr. Rempel"), would appear for the designee deposition, but that his answers to Plaintiff's questions would be based on memory alone because was unable to locate RML's records. (*See* Doc. 25-6, p. 2 of 4.) As to Plaintiff's inquiry regarding his "proper employer," RML advised that Plaintiff could easily glean the answer from his W-2's, which

---

[1] In the letter, counsel requested that RML provide information regarding the proper identity of Plaintiff's employer without the need for unnecessary discovery and litigation on the issue (Doc. 25-5, pp. 2-3 of 63), and further referenced that RML's website holds out the individuals named as purported discriminators within Plaintiff's complaint as high level management within RML (*see id.* at p. 10 of 63).

show that he "was paid by the employer known as 350 Wiconisco Street of Millersburg, LLC" ("350 Wiconisco"). (*Id.* at p. 3 of 4.) RML further stated that RML "had ceased operating as a business sometime ago and has absolutely no connection with 350 Wiconisco." (*Id.*)

On November 6, 2014, Plaintiff filed a motion to amend the complaint to add 350 Wiconisco as a defendant. (*See* Doc. 14.) In the motion, Plaintiff argued that Defendant RML and 350 Wiconisco were sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer for purposes of this action, and in support thereof produced numerous documents from the Internet evidencing that the two entities shared the same address and management team. (*Id.*) Pursuant to Local Rule 7.1, Plaintiff indicated that Defendant did not concur to the amendment. (*Id.*) Notwithstanding its non-concurrence, however, Defendant failed to file a response to the motion. (*See* Doc. 15.) On November 25, 2014, the court granted Plaintiff's motion as unopposed, noting that both the parties' resources as well as the resources of the court could have been spared by Defendant's acquiescence if it did not have a good faith objection to the motion. (*Id.*) On November 26, 2014, Plaintiff filed his first amended complaint, thereby adding 350 Wiconisco as an additional defendant in this action. (*See* Doc. 16.)

On February 11, 2015, Plaintiff took the depositions of two defense witnesses, Mr. Rempel and Courtney Kopenhaver ("Ms. Kopenhaver"), to ascertain the relationship between RML and 350 Wiconisco. (*See* Doc. 14, ¶ 16; Doc. 25-1, p. 5 of 14.) It was during the deposition of Mr. Rempel, who served as the corporate designee for both defendants, that Plaintiff avers he first became aware of the

existence of a third related entity, Outsourcing of Millsburg, Inc. ("Outsourcing of Millersburg"). (*See* Rempel Dep. at pp. 20-24.)   Although Mr. Rempel was highly evasive regarding his knowledge of the operations and ownership of the three entities, his testimony suggested that the three entities exist for the purpose of running a single outsourcing business. (*See id.* at pp. 47-48, 63-68, 75-76.)  In pertinent part, Mr. Rempel testified that 350 Wiconisco has no day-to-day operations and instead serves only to supply employees to Outsourcing of Millersburg.  (*See id.* at pp. 20-21, 24, 63.) Outsourcing of Millersburg, in turn, reimburses 350 Wiconisco for its payroll costs. (*See id.*)  Although Mr. Rempel denied having any knowledge as to the approximate number of 350 Wiconisco employees that work for Outsourcing of Millersburg, he testified that employees for both entities work at the same business locations.  As for RML, Mr. Rempel testified that RML ceased its operations at some point in the past, though he does not know when, and is simply a d/b/a for Outsourcing of Millersburg.[2] (*Id.* at pp. 63-65.)  When asked about RML's website, http://rmlsite.com, Mr. Rempel indicated that, while it appears to be a website for RML, it is "really a website for Outsourcing of Millersburg, d/b/a [RML]" because "Outsourcing of Millersburg is the company that performs these functions." (*Id.* at p. 75.)  He further testified that the business entity name

---

[2] More specifically, Mr. Rempel testified that "[t]here is no company called R.M.L.," but that he "believe[d]" it existed at one time. (Rempel Dep. at pp. 44-45.) Although he did not know who owned it, he testified that he may have been the owner and that his involvement with the company "probably would have been similar to [his] relationship with Outsourcing of Millersburg." (*Id.* at 45-46.) Acknowledging that his outsourcing business has changed its name over the years, Mr. Rempel conceded that RML "could have been one of the names.  If it was, it was a long time ago." (*Id.* at 48.) He later testified that Outsourcing of Millersburg does business as RML because they "were hoping some of [their] existing customers would remember [them]" and because his attorney set it up that way. (*Id.* at pp. 63-64.)

"Outsourcing of Millersburg" does not appear anywhere on the website "[b]ecause that's not a name anybody would know." (*Id.* at p. 76.)

Relating to ownership, Mr. Rempel testified that he believes his wife owns 350 Wiconisco, but acknowledged that he asked his attorney to create the company.[3] (*Id.* at 20, 37-39.) Although he initially volunteered that he owns Outsourcing of Millersburg, he later testified that he is not sure if he owns it, but surmises that he does and is the only owner. (*Id.* at pp. 25-26.) He also expressed uncertainty as to whether he owns, or any point owned, RML,[4] but conceded that he "probably was" the president of the corporation. (*Id.* at pp. 45-46, 67.) While he admitted that the three entities share the same business locations, he denied having any knowledge as to the ownership of those properties. (*See id.* at pp. 47-48, 54-56.)

The operations manager for Outsourcing of Millersburg, Ms. Koppenhaver, testified that she has supervisory authority over the employees of both 350 Wiconisco and Outsourcing of Millersburg. (*See* Koppenhaver Dep. at p. 25.) Despite her position, she stated that she lacked a full understanding of the relationship between the two entities and was unaware of which employees worked for which company. (*Id.* at pp. 46-47.) She was, however, able to identify Plaintiff as an employee of 350 Wiconisco based on his W-2. (*Id.* at pp. 45-46.) When asked why Plaintiff's pay stub indicated that he worked for RML, Ms. Koppenhaver speculated that it was due to an error by their payroll service company. (*Id.* at pp.

---

[3] Mr. Rempel had previously represented in his interrogatory responses that he owned 350 Wiconisco. (*See* Doc. 25-7, p. 2 of 2.)

[4] The court notes that the Pennsylvania Department of State listed RML as an "active" business corporation at the time of Mr. Rempel's deposition. (*See* Doc. 31-2, p. 2 of 2.)

5

122-23.) Mr. Rempel provided a similar response during his deposition, testifying that the pay stub was "prepared by a payroll service and they got it wrong." (Rempel Dep. at p. 74.)

On February 18, 2015, Plaintiff filed a motion for leave to file a second amended complaint to add Outsourcing of Millersburg as a defendant in the action. (Docs. 25 & 25-1.) Plaintiff argues, *inter alia*, that Defendants and Outsourcing of Millersburg are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer for purposes of the instant action. Although he failed to identify Outsourcing of Millersburg as his proper employer at the time of his initial filing, Plaintiff avers that he acted with the "utmost diligence in investigating the parties involved in this case to determine the proper entities to be named," and that he asked Defendants and their counsel "<u>numerous times</u> to simply stop 'game playing' and identify the properly named party." (Doc. 31, p. 2 of 11 (emphasis in original).) Because Defendants refused to cooperate with his efforts, however, the parties were "forced to engage in a corporate designee deposition," wherein Plaintiff first became aware of the existence of Outsourcing of Millersburg. (*Id.*) Plaintiff emphasizes that Outsourcing of Millersburg consistently holds itself out to its employees and the public as RML, and that both entities operate in conjunction with 350 Wiconisco to form a single outsourcing business. He adds that these three companies are so intertwined in their operations that, in response to a request for separation information with the Division of Unemployment Insurance, a manager of Outsourcing of Millersburg listed Plaintiff's employer as "350 Wiconisco Street (DBA-RML)." (Doc. 31-5, p. 2 of 2.) Likewise, on an EEOC Mediation Invitation

Response Form, Mr. Rempel, as the respondent, indicated that Plaintiff "[n]ever claimed these things while here/no problems were reported from [Plaintiff], only problems about [him] were reported to *us (RML)*." (Doc. 31, p. 5 of 11, Doc. 31-3, p. 2 of 2 (emphasis supplied).)

Defendants adamantly oppose Plaintiff's motion to amend, arguing that Plaintiff was not mistaken as to the identify of the proper parties to be named in the complaint, but rather failed to investigate his claims and acted in bad faith. (*See* Doc. 29, pp. 6, 8-9 of 20.) Defendants further argue that the proposed amendment is barred by the statute of limitations and would result in undue prejudice to Outsourcing of Millersburg. (*Id.* at p. 9 of 20.) The motion has been fully briefed and is ripe for disposition.

**II.        Legal Standard**

Rule 15(a) of the Federal Rules of Civil Procedure embodies the liberal pleading philosophy of the rules and provides that a party may amend its pleading outside of the applicable time line set forth by the rule only with leave of court or with the opposing party's written consent. Fed. R. Civ. P. 15; *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006). Although a decision to grant or deny a motion for leave to amend rests within the sound discretion of the district court, *Foman v. Davis*, 371 U.S. 178, 182 (1962), the court is obligated to grant leave freely "when justice so requires." Fed. R. Civ. P. 15. Under this liberal pleading standard, unless "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith[,] or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party," the leave sought

should, as the rules require, be freely given. *Diaz v. Palakovich*, 448 F. App'x 211, 215-16 (3d Cir. 2011) (citing *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)); *Provenzano v. Integrated Genetics, et al.*, 22 F. Supp. 2d 406, 410-11 (3d Cir. 1998).

When a plaintiff moves to amend the complaint to add a new party to a lawsuit after the statute of limitations has expired on his claims, the amendment is permissible only if the relation back doctrine of Rule 15 is satisfied. "Relation back is structured 'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" *Glover v. Federal Deposit Ins. Corp.*, 698 F.3d 139, 145 (3d Cir. 2012) (quoting *Krupski v. Costa Crociere S.p.A.*, ___ U.S. ___, ___, 130 S.Ct. 2485, 2494 (2010)). "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003). An amendment to a pleading relates back when: (1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading; (2) within the time period provided by Rule 4(m) for serving the summons and complaint, the party sought to be added received such notice of the action that it would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew or should have known that, but for a mistake concerning his or her identity, he or she would have been made a party to the action. Fed. R. Civ. P. 15(c)(1)(C); *Garvin*, 354 F.3d at 222.  In the instant case, the parties do not dispute that the statute of limitations on Plaintiff's claims expired and, therefore, the amendment must relate back to the original complaint.

**III.** **Discussion**

Defendants do not appear to dispute that the first condition of Rule 15(c), *i.e.*, the claim against the newly named defendant arose out of the conduct, transaction, or occurrence set forth in the original pleading, is met. Instead, Defendants argue that Plaintiff cannot meet the second and third conditions of the rule, *i.e.*, that Outsourcing of Millersburg had notice of the lawsuit within the 120 day time period provided by Rule 4(m) for service of the summons and complaint, *see* Fed. R. Civ. P. 4(m), and that Outsourcing of Millersburg knew or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity.[5]

**A.** **Notice**

Notice under Rule 15(c) does not require actual service of process on the party sought to be added. *Singletary v. Pennsylvania Dep't of Corrs.*, 266 F.3d 186, 195 (3d Cir. 2001). Rather, "notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Id.* (citing *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir. 1977)) (holding that a person who the plaintiff sought to add as a defendant had adequate notice under Rule 15(c) when, within the relevant time period, the person by happenstance saw a copy

---

[5] Although Defendants did not specifically argue administrative exhaustion in their opposing brief, they make note of the fact that Plaintiff did not name Outsourcing of Millersburg in his EEOC charge. Generally, if a plaintiff does not name a defendant in his administrative charge, he is precluded from later bringing an action against that defendant in court. *Schafer v. Board of Public Educ.*, 903 F.2d 243, 251 (3d Cir. 1990). The Third Circuit, however, recognizes an exception to this exhaustion requirement when the unnamed party (1) received notice of the action and (2) there is a shared commonality of interest between the named and unnamed parties. *Id.* at 252 (3d Cir. 1990). As discussed herein, Outsourcing of Millersburg was both on notice of Plaintiff's claims and shared a commonality of interest with RML. *See infra* Parts III.A and B.

of the complaint naming both the place where he worked and an "unknown employee" as a defendant, which he knew referred to him). However, the notice received must be more than notice of the event giving rise to the cause of action; it must be notice that the plaintiff instituted the action. *Id.*

Defendants challenge that Outsourcing of Millersburg received notice of the institution of Plaintiff's action within the 120 day time period required by the rules. However, Mr. Rempel's testimony indicated that RML is the fictitious business name assumed by Outsourcing of Millersburg under which the outsourcing business is conducted and presented to the world.[6] As such, Outsourcing of Millersburg and RML are one and the same, and there can be no question that Outsourcing of Millersburg received actual notice of the action filed against RML. Thus, the court easily concludes that Outsourcing of Millersburg received actual notice of Plaintiff's action at its inception such that it would not be prejudiced in maintaining a defense on the merits by relation back. Accordingly, Plaintiff has met his burden under Rule 15(c)(1)(C)(i).

### B. Mistake

To meet the final requirement of relation back, Plaintiff must also show that Outsourcing of Millersburg knew or should have known that, but for a mistake concerning the identity of the proper parties, the action would have been brought

---

[6] While the court is, to say the least, perplexed by RML's active registration as a registered corporation in Pennsylvania (*see* Doc. 31-2, p. 2 of 2), for purposes of this motion the court will take Mr. Rempel's testimony that RML ceased operating years ago and is simply a d/b/a name for Outsourcing of Millersburg at face value (*see* Rempel Dep. at pp. 44-48, 63-68). Assuming, *arguendo*, that RML is a separate legal entity, the court would nonetheless impute notice to it pursuant to the "identity of interest" method of imputing notice under Rule 15(c), as the "parties are so closely related in their business operation or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Singletary*, 266 F 3.d at 266 F.3d at 197.

against it. *Id*. at 194. Defendants contend that Plaintiff has not met this requirement because he was not "mistaken" as to the proper identity of his employer, but rather failed to investigate his claims and acted in bad faith.[7] However, "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing [his] original complaint." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) (emphasis in original). Thus, the appropriate inquiry under Rule 15(c)(1)(C)(ii) is "what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Id.* at 553-54. "Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* at 548.

Outsourcing of Millersburg could not reasonably have believed that Plaintiff was not mistaken as to the proper identity of his employer when he filed his complaint against RML, its registered d/b/a name. However, instead of placing Plaintiff on notice of Outsourcing of Millersburg's existence, Defendants answered the complaint by asserting that it was not Plaintiff's or any of the purported discriminators' employer, and later affirmatively led Plaintiff to believe that his proper employer was 350 Wiconisco, despite the court urging the parties to work cooperatively to resolve the issue. This charade continued at Defendants' corporate designee deposition, wherein Mr. Rempel, the designee for both RML and 350

---

[7] It is striking to the court that Defendants agree in their brief that it is "most likely true" that Plaintiff only became aware of Outsourcing of Millersburg's existence during the corporate designee depositions taken on February 11, 2015, but then state on the same page that there is no evidence to support this allegation. (Doc. 30, p. 6 of 20.)

Wiconisco, initially feigned a lack of familiarity with RML, even going so far as to state that, while he "believe[d]" RML was, at one time, a company, he was unsure if he ever had any involvement with it. (*See* Rempel Dep. at pp. 22, 44-46.) After repeated questioning on the subject, however, Mr. Rempel admitted that Outsourcing of Millersburg, which he "happen[ed] to own," does business exclusively as RML. (*See Rempel Dep.* at pp. 63-68).

Thus, if there has been undue delay or bad faith on anyone's behalf, it would fall squarely on Defendants' shoulders. Although the court will stop short in this instance from concluding that Defendants have acted in an attempt to conceal the identity of Plaintiff's proper employer or to engage in dilatory tactics, it is apparent that Defendants have contributed to Plaintiff's confusion and demonstrated resistence to Plaintiff's efforts to sue the proper party. This conduct is particularly unsettling given that it comes on the heels of a clear admonishment from the court that the parties should act in good faith and refrain from engaging in dilatory tactics. (*See* Doc. 15.)

There is a difference between zealous advocacy and a litigious game of three-card Monte intended to avoid the efficient progression of litigation. Defendants' conduct thus far demonstrates their choice to pursue the latter.

**IV.     Conclusion**

The parties do not dispute the first condition of Federal Rule of Civil Procedure 15(c), and, for the reasons provided above, the court finds that Plaintiff has met his burden as to the second and third conditions. Because all three

conditions of Rule 15(c) have been met, the amendment to the complaint adding Outsourcing of Millersburg as a defendant in the action relates back to the filing of the original complaint and Plaintiff's claims against Outsourcing of Millersburg are not barred by the statute of limitations. Accordingly, the court will grant Plaintiff's motion to amend the complaint.

                                                           s/Sylvia H. Rambo
                                                          United States District Judge

Dated: March 31, 2015